IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LARRY JOHNSON,  \*

    Petitioner, \*

                                                                       Civil Action No. RDB-11-2875

v.  \*

                                                                       Criminal Action No. RDB-07-0153

UNITED STATES OF AMERICA, \*

    Respondent. \*

\* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

On October 6, 2011, the *pro se* petitioner Larry Johnson ("Petitioner") filed a Motion to Vacate pursuant to 28 U.S.C. § 2255 (ECF No. 90). On February 23, 2012, Petitioner filed a Motion to Amend his Motion to Vacate (ECF No. 100). Although Petitioner's Motions are long and meandering,[1] this Court is able to discern five separate claims: (1) that this Court's conclusions were unsupported by fact; (2) that the federal prosecution was a sham prosecution; (3) that this case warranted a retroactive application of *Arizona v. Gant*, 556 U.S. 332 (2009); (4) that Petitioner's counsel rendered ineffective assistance; and (5) that the Government's actions regarding some of the evidence violated Petitioner's rights under *Brady v. Maryland*, 373 U.S. 83 (1963). This Court has reviewed Petitioner's Motion to Vacate (ECF No. 90), Petitioner's Motion to Amend (ECF No. 100), the Government's Opposition (ECF No. 98), and Petitioner's Reply to the Government's Opposition (ECF No. 99), and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, Petitioner's Motion to Amend (ECF No. 100) is GRANTED and Petitioner's Motion to Vacate (ECF No. 90)

---

[1] Petitioner's Memorandum of Law in Support of his Motion to Vacate (Attach. 2, ECF No. 90) is 113 pages long and largely consists of irrelevant case law and arguments that are not cognizable. Petitioner's Memorandum of Law in Support of his Motion to Amend (ECF No. 111) is 10 pages long.

1

is DENIED.

## **BACKGROUND**

On September 7, 2007, a jury found Petitioner Larry Johnson guilty on all three counts of his indictment (ECF No. 57). These three counts included: (1) possession with intent to distribute cocaine and heroine in violation of 21 U.S.C. § 841(a)(1); (2) possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c); and (3) possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). On November 29, 2007, this Court sentenced Petitioner to a total term of 360 months, as well as three years of supervised release and an assessment of $300. Judgment, ECF No. 60.

The facts of this case are taken from Petitioner's appeal of his conviction to the United States Court of Appeals for the Fourth Circuit. *United States v. Johnson*, 599 F.3d 339, 341-342 (4th Cir. 2010). On September 14, 2006, Detective Eric Green ("Detective Green") was conducting video surveillance of the 1800 block of Pennsylvania Avenue in Baltimore City, an area known to be infested with narcotics activity. Detective Green, who has executed thousands of drug arrests, observed Petitioner engage in what appeared to be three drug sale transactions. In each of these three transactions, an individual would quickly approach Petitioner, engage in a hand-to-hand exchange, and then immediately leave the area.

Detective Green contacted Officer Bannerman and another officer and asked them to arrest Petitioner. While Detective Green waited for the arrest team to arrive at the scene, he used his pole camera to continue observing Petitioner. He watched Petitioner mill about the street, leave the area for a brief time, and then return to the original place where he had engaged in the three hand-to-hand exchanges. After reaching into his pocket, Petitioner entered a Chinese carry-out restaurant. Two suspected buyers were with Petitioner. The first entered the store with

Petitioner, but the second saw the officers' marked patrol car and continued walking past the restaurant.

Officer Bannerman entered the restaurant and identified himself. When he asked to see Petitioner's hands, Petitioner refused compliance and threw what Officer Bannerman correctly identified as a heroine gel cap over the restaurant counter. After a struggle, Officer Bannerman arrested Petitioner. Officer Bannerman recovered the gel cap and found $102 in Petitioner's possession. While the officers drove Petitioner to the police station in their patrol car, Detective Green reviewed the video surveillance again.

Upon review of the video surveillance, Detective Green noticed that before engaging in the three hand-to-hand exchanges, Petitioner had accessed a parked car and appeared to have removed something from it. Based on his belief that Petitioner was storing narcotics in that car, Detective Green instructed Officer Bannerman to return to the scene and secure the car. When Officer Bannerman returned, he looked through the car window and saw car keys and narcotics resembling the heroine gel cap seized during Petitioner's arrest. Detective Green instructed Officer Bannerman to use the keys and drive the car to the police station. When Officer Bannerman opened the car, he found not only more heroine gel caps, but also suspected cocaine. At the police station, the officers conducted a thorough search of the car. They found suspected cocaine and heroine, a mirror with suspected narcotics residue, a razor blade, and a handgun.

After his indictment, Petitioner filed two suppression motions regarding the evidence obtained in the course of his arrest and the search of the car. After a suppression hearing, this Court denied both motions to suppress. Petitioner proceeded to trial, after which a jury found him guilty on all three counts of his indictment. Petitioner then appealed, and the United States Court of Appeals for the Fourth Circuit affirmed both Petitioner's conviction and sentence in a

published opinion on April 1, 2010. *Johnson*, 599 F.3d 339. On October 6, 2011, Petitioner filed the instant Motion to Vacate under 28 U.S.C. § 2255.

## STANDARD OF REVIEW

This Court recognizes that Petitioner Larry Johnson ("Petitioner") is proceeding *pro se* and has accorded his pleadings liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). There are limited grounds upon which a petitioner may state a claim for relief under 28 U.S.C. § 2255. Under Section 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence where (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (b) the court lacked "jurisdiction to impose the sentence . . . [(c)] the sentence was in excess of the maximum authorized by law, or [(d) the sentence] is otherwise subject to a collateral attack." 28 U.S.C. § 2255. "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.' " *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). In general, prisoners are instructed to raise any Sixth Amendment ineffective assistance of counsel claims in a motion under 28 U.S.C § 2255. *Id.* "Ineffective assistance claims are generally not cognizable on direct appeal . . . 'unless [an attorney's ineffectiveness] conclusively appears from the record.'" *United States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008) (quoting *United States v. Richardson*, 195 F.3d 192, 198 (4th Cir. 1999)).

## ANALYSIS

Petitioner has filed two Motions containing the claims that he believes justify relief under 28 U.S.C. § 2255. While Petitioner's Motion to Vacate, at 113 pages, is long and meandering, this Court discerns five separate claims: (1) that this Court's conclusions were unsupported by

4

fact; (2) that the federal prosecution was a sham prosecution; (3) that this case warranted a retroactive application of *Arizona v. Gant*, 556 U.S. 332 (2009); (4) that Petitioner's counsel rendered ineffective assistance; and (5) that the Government's actions regarding some of the evidence violated Petitioner's rights under *Brady v. Maryland*, 373 U.S. 83 (1963). In his Motion to Amend his Motion to Vacate, Petitioner merely expands on the sham prosecution claim in his original Motion to Vacate. Specifically, Petitioner discusses the Project Exile program in furtherance of his sham prosecution claim. This Court will address Petitioner's Motion to Amend and Supplement before turning to the merits of Petitioner's Motion to Vacate.

### A. Petitioner's Motion to Amend his Motion to Vacate (ECF No. 100)

Preliminarily, this Court addresses Petitioner's Motion to Amend and Supplement his Motion to Vacate (ECF No. 100). Rule 15(d) of the Federal Rules of Civil Procedure governs motions to supplement. The Fourth Circuit has instructed, "the standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical." *Franks v. Ross*, 313 F.3d 184, 198 n. 15 (4th. Cir. 2002). The Fourth Circuit continued, "[i]n either situation, leave should be freely granted, and should be denied only where 'good reason exists . . . such as prejudice to the defendants.' " *Id.* (quoting *Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2002)). Petitioner filed this Motion within the one-year statute of limitations for filing a motion to vacate. Moreover, the Government does not oppose this Motion. Accordingly, this Court GRANTS Petitioner's Motion to Amend and Supplement (ECF No. 100). The amendments that Petitioner requests (ECF No. 100) are hereby considered in conjunction with the arguments asserted in his Motion to Vacate (ECF No. 90).

### B. Petitioner's Motion to Vacate (ECF No. 90)

Because Petitioner is *pro se*, this Court has construed his Motion to Vacate liberally. *See*

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007). While many of Petitioner's claims are not cognizable, this Court has carefully reviewed them all. First, this Court will explain its reasons for dismissing Petitioner's claim that this Court's conclusions of law were unsupported by facts because it is not cognizable. Then, this Court will consider Petitioner's four remaining claims: (1) that the federal prosecution was a sham prosecution; (2) that this case warranted a retroactive application of *Arizona v. Gant*, 556 U.S. 332 (2009); (3) that his counsel rendered ineffective assistance; and (4) that the Government's actions regarding some of the evidence in his case violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963).

1. *Petitioner's Claim that this Court's Conclusions of Law Were Unsupported by Fact*

Petitioner alleges that this Court's conclusions of law during the suppression and sentencing hearings, as well as on the eve of trial, were unsupported by fact. Petitioner raises these allegations for the first time in his Motion to Vacate. In general, "claims not raised on direct appeal may not be raised on collateral review." *Masaro v. United States*, 538 U.S. 500, 503 (2003). Petitioner's claims that this Court's conclusions were unsupported by facts could have been raised on direct appeal. Because Petitioner failed to raise them on appeal, and because Petitioner has not shown that these claimed errors "constituted 'a fundamental defect which inherently results in a complete miscarriage of justice,' " these claims are not cognizable for collateral review. *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Even if this claim were cognizable, Petitioner offers no legitimate reasons in support of his barebones assertion that this Court's holdings were unsupported by the facts. To the extent Petitioner is simply unhappy with the result of the suppression hearing, he challenged this court's findings on appeal and the Fourth Circuit affirmed this Court's findings. Accordingly, Petitioner is procedurally barred from bringing

them at this point.

### 2. *Petitioner's Sham Prosecution Claim*

Petitioner alleges that his federal prosecution was a "sham prosecution" since his case was transferred by state court to federal court through the Project Exile program. Project Exile is a federal program that shifts the prosecutions of some gun possession offenses from state to federal court. Petitioner suggests that it was unconstitutional for his case to begin in state court but end in federal court.

Under the dual sovereignty doctrine, a defendant who has been prosecuted in state court may also be subject to a subsequent federal prosecution for the same offense. *United States v. Jackson*, 295 F. App'x 572, 573 (2008) (citing *Heath v. Alabama*, 474 U.S. 82, 89 (1985)). If, however, the defendant shows that the federal prosecution was a "sham prosecution," he will be protected against subsequent federal prosecution. According to the Fourth Circuit, a prosecution may be considered a "sham" "when federal and state prosecutors have manipulated the system in order to achieve the equivalent of a second prosecution." *Jackson*, 295 F. App'x at 574. Thus, it is axiomatic that a defendant's prosecution in the earlier state action is a necessary predicate for a "sham prosecution" claim. To succeed on a sham prosecution claim, a defendant must "'show that one sovereign was so dominated, controlled or manipulated by the actions of the other that it did not act of its own volition' and that it was merely a tool of the other." *United States v. Holland*, 985 F. Supp. 587, 593 (quoting *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1361 (11th Cir. 1994)). In this case, Petitioner was never prosecuted in the state action and thus, Petitioner's sham prosecution claim fails.

3. *Petitioner's Request for Retroactive Application of* Arizona v. Gant

Petitioner argues that this case warrants a retroactive application of *Arizona v. Gant*, 556 U.S. 332 (2009), and that such application would have invalidated the police's search of the vehicle that Petitioner accessed before engaging in the three hand-to-hand exchanges. *Gant* limits the extent of warrantless searches incident to arrest. Specifically, the Supreme Court in *Gant* held that "a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle" is not authorized. 556 U.S. at 335. The Court continued that "circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Id.*

In this case, this Court found Officer Bannerman's search lawful because he had probable cause to search the vehicle. If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798, 820-821 (1982), authorizes a search of any area of the vehicle in which the evidence might be found. As the Fourth Circuit explained, Officer Bannerman had probable cause to search the vehicle, not only because Petitioner had been "seen on video going to the car just before the hand-to-hand encounters that were at the heart of the probable cause to arrest," but also because when Officer Bannerman looked in the vehicle's window, he "saw gel caps in plain view like the one he had recovered from [Petitioner]." *United States v. Johnson*, 599 F.3d 339, 347 (4th Cir. 2010). A retroactive application of *Gant* would not have changed the outcome of Petitioner's suppression hearing, since this Court found several alternative bases for finding the warrantless vehicle search lawful. As a result, Petitioner is entitled to no relief as his claim under *Gant* fails.

### 4. *Petitioner's Ineffective Assistance of Counsel Claims*

Although Petitioner alleges that his counsel rendered ineffective assistance in myriad ways throughout his pretrial investigation, trial, and appeal, none of his allegations have merit. To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The first, or "performance" prong, of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In making this determination, courts observe a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688-89. The second, or "prejudice" prong, requires that a defendant demonstrate that his counsel's errors deprived him of a fair trial. *Strickland*, 466 U.S. at 687. The Fourth Circuit has concluded that the mere possibility of a different trial result does not satisfy the burden placed on the defendant. *Hoots v. Allsbrook*, 785 F.2d 1214, 1220 (4th Cir. 1986). Ineffective assistance of counsel claims may be disposed of solely based upon a deficiency in showing prejudice. *Strickland*, 466 U.S. at 697.

Many of Petitioner's ineffective assistance of counsel claims fail under the performance prong of *Strickland*. This prong requires a defendant to show that his or her counsel rendered deficient representation. *Id.* at 688. Petitioner alleges that his counsel rendered deficient representation by failing to interview or obtain a signed affidavit from the employee of the Chinese carry-out restaurant who threw the gel cap over the counter, failing to obtain the Baltimore City Police Department's radio recording of the September 14, 2006 incident, and failing to cross-examine the expert who opined that the firearm was possessed in furtherance of Petitioner's drug trafficking. In direct opposition to Petitioner's allegations, however, the record

9

shows that Petitioner's counsel did all of these things. Because Petitioner's counsel performed these tasks, his performance did not fall below an objective standard of reasonableness. Accordingly, these claims fail.

Two more of Petitioner's claims also fail the performance prong of *Strickland*. When assailing a choice that counsel made during trial, a defendant must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). In deciding whether Petitioner has met this burden, this Court must make a "fair assessment of attorney performance," which "requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* This Court cannot find any egregious issues on the part of counsel in how he defended Petitioner. While Petitioner expresses dissatisfaction with some of the decisions that his counsel made, he does not point to any particular action that falls outside of the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688. First, Petitioner claims that his counsel rendered ineffective assistance by failing to impeach Detective Green about his alleged marijuana possession after the date of Petitioner's arrest. This claim fails because defense counsel devoted considerable time to this topic in his cross-examination of Detective Green. Second, Petitioner claims that his counsel rendered ineffective assistance by failing to raise what Petitioner alleges to have been the "strongest" arguments on appeal to the Fourth Circuit. Petitioner does not provide this Court any reason for doubting that his counsel utilized his best judgment in how to proceed with Petitioner's case on appeal. Moreover, Petitioner filed lengthy supplemental appellate briefs, in addition to the brief filed by his counsel, in which he could have raised any arguments that he believed to be the strongest. As a result, these two claims fail.

Petitioner's six remaining ineffective assistance of counsel claims fail the prejudice prong of *Strickland*. To satisfy the prejudice prong of *Strickland,* a defendant must show that counsel's performance was so prejudicial as to "deprive the defendant of a fair trial." 466 U.S. at 687. First, Petitioner claims that he suffered prejudice because his counsel failed to file a motion for discovery and inspection. Petitioner was not prejudiced by this action because the Government fully complied with Petitioner's previous discovery requests and thus, an additional request would have proven futile.

Second, Petitioner claims that his trial would have resulted in a different outcome had counsel filed a motion to dismiss the indictment based on a constitutional challenge to the Project Exile program. This is not a meritorious reason to seek dismissal because the Project Exile program is a well-established program that no court has found unconstitutional, whether for double jeopardy concerns or otherwise. *See United States v. Jones*, 36 F. Supp. 2d 304 (E.D. Va. 1999) (upholding the indictment of a case transferred from state to federal court through Project Exile, despite entertaining argument about the program's constitutionality). Third, Petitioner alleges that he suffered prejudice because his counsel failed to assess whether Detective Green was qualified to conduct video surveillance and object to the use of the blue light camera that Detective Green used. Petitioner fails to provide any legitimate reason for considering Detective Green not competent to conduct surveillance. Moreover, he offers no explanation for why counsel's failure to assess Detective Green's qualifications caused him prejudice.

Fourth, Petitioner claims that he suffered prejudice because his counsel failed to object to this Court's finding that there was a proper inventory search and failed to move to dismiss the indictment on that ground. Petitioner's counsel filed a motion to suppress, arguing that the

officers had no probable cause to search the vehicle by filing a motion to suppress. That motion was denied. A further objection to this Court's finding that there was a proper inventory search would not have merit. Thus, such objection would not have changed the outcome of the case.

Fifth, Petitioner claims that his trial would have resulted in a different outcome if his counsel had sought to exclude the $102 found on Petitioner when he was arrested, on the grounds that the money had been returned to Petitioner. Petitioner fails to provide, and this Court cannot imagine, a legitimate reason why excluding this money would have changed the outcome of his trial. Sixth, Petitioner claims that his counsel erred in "persuading him to challenge" standing and that he should have called witnesses to support testimony regarding standing. This Court found that even if Petitioner did have standing, the search was constitutional. Thus, the outcome of the suppression motion would be unaffected by Petitioner's standing argument, which was already unsuccessful.

For the foregoing reasons, all of Petitioner's ineffective assistance of counsel claims fail.

5.      *Alleged Violations of* Brady v. Maryland

Petitioner claims that there are nine pieces of evidence that would have been favorable to him and material to the outcome of his case, and thus, that the Government's failure to bring this evidence violated his rights under *Brady v. Maryland,* 373 U.S. 83 (1963). Under *Brady*, prosecutors in a criminal case must turn over exculpatory evidence to the defense upon request. *Id.* at 87. To prove a *Brady* violation, Petitioner must show that: (1) the evidence was favorable to him because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material to his defense. *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999). The first prong is self-explanatory. The second prong refers to evidence which is "information . . . known to the prosecution but unknown to the defense." *United States v.*

*Agurs*, 427 U.S. 97, 103 (1976). The final prong is met if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley v. U.S.*, 473 U.S. 667, 682 (1985).

After careful review, this court finds that Petitioner does not make out a successful *Brady* claim with regards to any of the nine pieces of evidence. In the interest of brevity, this court deals with these pieces of evidence together. The first two pieces of evidence fail the first prong of the *Brady* test because they are not exculpatory. Petitioner alleges that the ATF trace and investigation summary reports, as well as the destroyed video surveillance tape, were exculpatory, but presents no more than speculation and conjecture regarding what he believes they would show. In fact, the record shows that these pieces of evidence would have been favorable to the Government rather than to Petitioner. First, Petitioner speculates that because the ATF trace and investigation summary reports suggest that the firearm "lawfully" crossed foreign lines, it would have been beneficial to his case. However, whether the firearm crossed foreign lines lawfully would not have benefited Petitioner's case because the interstate commerce element was still met, as the record contained evidence that the firearm was manufactured in another state or country. Second, Petitioner tries to argue that the destroyed video surveillance tape would have shown that Petitioner was not guilty. Petitioner does not marshal any evidence to support this conjecture. Moreover, Petitioner's counsel spent considerable time cross-examining Detective Green about the destroyed video surveillance tape in an attempt to impeach him, but to no avail.

The next five pieces of evidence fail the second prong of the *Brady* test because they were not suppressed by the prosecution. In order to meet the suppression prong, the Petitioner must point to evidence which is "information . . . known to the prosecution but unknown to the

defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976). Petitioner concedes the Government disclosed the Police Department video retrieval form, the Baltimore City Police Department's radio recording of the September 14, 2006 incident, and the Internal Investigation Division reports. The Government did not have possession of the restaurant video surveillance tape or cell phone records. Because the Government either produced this evidence or never possessed it, these *Brady* claims necessarily fail.

The final two pieces of evidence fail the final prong of the *Brady* test because they are not material to the defense. To prove a *Brady* violation, a petitioner must show that the prosecution was aware of material evidence favorable to the defense, yet failed to disclose it. *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Evidence is material if its disclosure would have the reasonable probability of altering the outcome of the proceeding. *United States v. Bagley*, 473 U.S. 667, 682 (1985). Petitioner argues that the BPD vehicle seizure form and Grand Jury transcripts were material to his defense, but Petitioner does not offer any legitimate reasons why they had any bearing whatsoever on his criminal prosecution. Because Petitioner cannot meet the burden of showing materiality, these two *Brady* claims fail.

In addition to these nine pieces of evidence, Petitioner also challenges the admission of the video surveillance at his trial. As discussed earlier, in general, "claims not raised on direct appeal may not be raised on collateral review." *Masaro v. United States*, 538 U.S. 500, 503 (2003). Petitioner not only failed to raise the claim about the admitted video surveillance on direct appeal, but also fails to show that its admission would have changed the outcome of his trial. Thus, Petitioner is procedurally barred from raising this claim.

**CONCLUSION**

This Court determines that all five of Petitioner's claims fail. First, Petitioner's claims that this Court's conclusions were unsupported by fact are procedurally barred. Second, Petitioner's claims that the federal prosecution was a sham prosecution lack any merit. Third, Petitioner's claim that this case warranted a retroactive application of *Arizona v. Gant*, 556 U.S. 332 (2009), fails because this Court found that Officer Bannerman's vehicle search was lawful, and *Gant* would not change the result. Fourth, Petitioner's ineffective assistance of counsel claims fail, since this Court finds that Petitioner received reasonable assistance from counsel and suffered no prejudice. Fifth, Petitioner's remaining claims fail because this Court finds that Petitioner's rights under *Brady v. Maryland*, 373 U.S. 83 (1963), were not violated. For the reasons stated above, Petitioner's Motion to Amend (ECF No. 100) is GRANTED and Petitioner's Motion to Vacate (ECF No. 90) is DENIED.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated: August 2, 2013

                                                                  /s/
                                     Richard D. Bennett
                                     United States District Judge